**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

MAR 2 0 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**ABHISHEK FAMANLAL RAVAL,** *et al.*,  )
                                        )
    **Plaintiffs,**                     )
                                        )
    v.                                  )   Civil Case No. 17-2358 (RJL)
                                        )
**UNITED STATES CITIZENSHIP AND**       )
**IMMIGRATION SERVICES,** *et al.*,     )
                                        )
    **Defendants.**                     )

## MEMORANDUM OPINION
(March **19**, 2019) [Dkt. # 10]

In 2001, KPS Investment Company ("KPS"), a business owned by Pete Patel ("Patel"), sought authorization for Abhishek Ramanlal Raval ("Raval") to work for KPS in the United States. KPS filed a labor certification with the United States Department of Labor and an I-140 visa petition with the United States Citizenship and Immigration Service ("USCIS"), listing Raval as the beneficiary of both. The requested work authorization was initially granted. But in 2004, USCIS invalidated KPS's labor certification and revoked its I-140 petition due in part to a finding that Raval had willfully misrepresented his work experience on KPS's applications. The decision left Raval ineligible for permanent residency in the United States, which he had been seeking at the time his work authorization was revoked.

KPS, Patel, and Raval (collectively, "plaintiffs") filed this lawsuit against nine

governmental entities and officials[1] to challenge USCIS's decision, alleging that it was arbitrary, capricious, and unlawful. The Government responded with a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, and the motion is now pending before me. Upon consideration of the pleadings and the relevant law, the Government's motion must be GRANTED.

## BACKGROUND

Raval is an alien seeking legal authorization to work and permanently reside in the United States through a three-step process administered by the Department of Labor and USCIS. The process begins when a United States employer

> names an available alien worker for an open and advertised position and asks the Secretary of Labor to certify that (1) the employer attempted to recruit U.S. workers in good faith; (2) no U.S. worker is qualified, able, willing, or available for such employment; and (3) employing the alien worker will not adversely affect U.S. wages or working conditions.

*IQ Sys., Inc. v. Mayorkas*, 667 F. Supp. 2d 105, 107 (D.D.C. 2009) (citing 8 U.S.C. § 1182(a)(5) and 20 C.F.R. § 656.10(a) & (c)). If the Department of Labor issues a "labor certification" in response, the employer "may file with USCIS a Form I-140 Immigrant Worker Visa Petition" that attaches the certification. *Id.* (citing 8 U.S.C. § 1153(b)(3)(C)

---

[1] The defendants named in the complaint are the United States of America; William P. Barr, U.S. Attorney General; Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; U.S. Citizenship and Immigration Services' Texas Service Center; Gregory A. Richardson, Director, U.S. Citizenship and Immigration Services' Texas Service Center; U.S. Citizenship and Immigration Services' Administrative Appeals Office; and Barbara Q. Velarde, Chief, U.S. Citizenship and Immigration Services' Administrative Appeals Office (collectively, "the Government" or "defendants"). All individual defendants are being sued in their official capacities, and several individual defendants have been substituted for predecessors named in the complaint pursuant to Federal Rule of Civil Procedure 25(d).

2

and 8 C.F.R. § 204.5(l)(3)(i)). "Upon approval of [the] I–140 Petition," the alien receives authorization to work for the employer-applicant and may proceed to the final step in the process, a "petition for adjustment of his status to that of permanent resident, through Form I-485." *Id.* at 107 & n.2 (citing 8 U.S.C. § 1255 and 8 C.F.R. § 204.5(n)).

Raval's application process began on April 27, 2001, when KPS applied for a labor certification on his behalf. *See* Compl. ¶ 14 [Dkt. # 1]. The Department of Labor issued the requested certification, and on April 28, 2003, USCIS's predecessor agency approved KPS's associated I-140 petition, authorizing Raval to work for KPS in the United States. *See id.*

The work authorization lasted about eighteen months. On October 5, 2004, USCIS noticed its intent to revoke KPS's I-140, explaining that the agency had obtained evidence that Raval falsified his work history on the labor certification. *See* Compl. ¶ 14. Raval timely responded to the notice, but unconvinced by his submission, USCIS revoked the I-140 petition on October 27, 2004, based in part on a finding of fraud against him. *See id.* ¶¶ 15, 22. USCIS then determined that the fraud finding rendered the labor certification invalid. *See id.* ¶ 22. And because the I-140 revocation left Raval without work authorization, his pending I-485 application, through which Raval was seeking permanent residency, was denied a few days later. *See id.* ¶ 16.

Raval continued pressing his case before USCIS but never persuaded the agency to reverse its fraud finding. *See id.* ¶¶ 17-29. On January 5, 2017, USCIS's Administrative Appeals Office upheld the decision to revoke KPS's I-140 petition. *See id.* ¶¶ 27-29. The

Appeals Office affirmed both USCIS's finding that Raval had "willfully misrepresented his qualifying experience" on the labor certification and USCIS's two additional bases for revoking the I-140—Raval did not "possess[] . . . the experience required for the offered position," and KPS did not have the "ability to pay the proffered wage." Compl. Ex. 2 at 10 [Dkt. # 1-4].

On November 8, 2017, plaintiffs filed this lawsuit to challenge the administrative actions revoking KPS's I-140 petition, invalidating the associated labor certification, and denying Raval's I-485 application.

## STANDARD OF REVIEW

"Under Rule 12(b)(1), 'the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.'" *Hunter v. FERC*, 569 F. Supp. 2d 12, 15 (D.D.C. 2008) (quoting *Lindsey v. United States*, 448 F.Supp.2d 37, 42 (D.D.C.2006)). "[T]he Court 'must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs.'" *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (quoting *Fitts v. Federal Nat'l Mortgage Ass'n*, 44 F.Supp.2d 317, 321 (D.D.C.1999)). But a jurisdictional "inquiry focuses on the Court's power to hear the claim," so "the Court may give the plaintiff's factual allegations closer scrutiny and may consider materials outside the pleadings." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## ANALYSIS

The Government is correct that this Court lacks jurisdiction to review USCIS's decision to revoke KPS's I-140 petition. Two provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, operate together to preclude judicial review. First, 8 U.S.C. § 1252(a)(2)(B)(ii) provides, with one inapplicable exception, that "no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." Second, 8 U.S.C. § 1155, USCIS's[2] statutory basis for revoking KPS's I-140 petition, *see* Compl. Ex. 2 at 2, grants exactly the sort of discretionary authority that Section 1252(a)(2)(B)(ii) places outside the ambit of courts' jurisdiction. Section 1155 provides, "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of" an I-140 petition. 8 U.S.C. § 1155.

The text of Section 1155 makes clear that it is a grant of discretionary authority. Congress used the permissive "may," establishing that the Secretary's revocation authority is to be exercised at her election. It used the expansive "at any time," removing any temporal limits on exercises of the authority. And Congress modified the good and sufficient cause requirement in the statute to apply to anything the Secretary "deems" good

---

[2] The Secretary of Homeland Security has delegated the authority to revoke I-140 petitions to USCIS. *See* 6 U.S.C. § 271(b)(1); 8 C.F.R. § 205.2(a); *see also De Souza v. Napolitano*, 62 F. Supp. 3d 175, 176 (D. Mass. 2014) ("The Secretary of Homeland Security . . . has delegated to USCIS the authority to accept, reject and/or adjudicate immigrant visa petitions. . . . [R]evocation authority has also been delegated to USCIS.").

5

and sufficient, making the Secretary arbiter of what substantively justifies an I-140 revocation. These "three language choices" all "indicate[] that the decision to revoke the approval of a visa petition is discretionary." *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) ("At least three language choices in § 1155 dictate this conclusion: 'may,' 'at any time,' and 'for what he deems to be good and sufficient cause.'").

To date, eight federal courts of appeals agree that 8 U.S.C. §§ 1155 and 1252(a)(2)(B)(ii) preclude judicial review of I-140 revocations. *See Bernardo*, 814 F.3d at 483-91; *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1098-99 (8th Cir. 2016); *Khalil v. Hazuda*, 833 F.3d 463, 467 (5th Cir. 2016); *Mehanna v. USCIS*, 677 F.3d 312, 313, 315 (6th Cir. 2012); *Green v. Napolitano*, 627 F.3d 1341, 1343, 1346 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Sands v. U.S. Dep't of Homeland Security*, 308 Fed. App'x. 418, 419-20 (11th Cir. 2009) (per curiam); *Ghanem v. Upchurch*, 481 F.3d 222, 223-25 (5th Cir. 2007); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 200-05 (3d Cir. 2006); *El-Khader v. Monica*, 366 F.3d 562, 567-68 (7th Cir. 2004). In addition, two district courts in this Circuit have arrived at the same conclusion by analyzing the same statutory text. *See Mohammad v. Napolitano*, 680 F. Supp. 2d 1, 6-7 (D.D.C. 2009) (Sullivan, J.); *Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 10-12 (D.D.C. 2001) (Lamberth, J.). While our Circuit Court has not addressed this question directly, the straightforward reading of Sections 1155 and 1252(a)(2)(B)(ii) applied in these numerous authorities accords with our Circuit's interpretation of other, similarly worded provisions

of the INA. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (pointing to Congress's use of "may" and "deem" in 8 U.S.C. § 1153(b)(2)(B)(i) when determining that Congress committed a decision to the Attorney General's discretion).

Against this weight of authority, plaintiffs argue that I should follow the Ninth Circuit, the one court of appeals that has adopted a competing interpretation of Section 1155. That court held over a thoroughly convincing dissent by Judge Tallman "that the 'good and sufficient cause' language contained in § 1155 . . . constitutes a legal standard the meaning of which [courts] retain jurisdiction to clarify." *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 893 (9th Cir. 2004). But focusing narrowly on the words "good and sufficient cause" is, to say the least, not a persuasive reading of the statute. *See Mohammad*, 680 F. Supp. 2d at 6 ("[T]he Court finds the dissenting opinion in *ANA International* much more persuasive . . . ."). Those words do not appear in isolation. The phrase at issue is "what [the Secretary] deems to be good and sufficient cause." 8 U.S.C. § 1155. And as numerous other circuits have recognized, "when read in [that] context and as a whole, the statute makes clear that Congress delegates to the Secretary the decision to determine what constitutes good and sufficient cause." *Ghanem*, 481 F.3d at 224; *see also Bernardo*, 814 F.3d at 486; *Jilin Pharm.*, 447 F.3d at 203.

By delegating the authority to make that substantive determination, Congress committed to the Secretary's discretion decisions about when and why I-140 petitions should be revoked. Under Section 1252(a)(2)(B)(ii), such decisions are not subject to judicial review, so plaintiffs' challenge to the revocation of KPS's I-140 petition must be

7

dismissed for lack of jurisdiction.

Undaunted, plaintiffs also challenge the denial of Raval's I-485 application and the invalidation of KPS's labor certification. But with no possibility of obtaining an approved I-140 petition, plaintiffs lack standing to bring these claims. After all, standing requires a showing that it is "likely, as opposed to merely speculative, that the injury [alleged in the complaint] will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). And plaintiffs' alleged injuries cannot be cured so long as KPS's I-140 petition remains revoked. How so?

To redress injuries caused by USCIS's decision to deny Raval's I-485 application, plaintiffs must show that a favorable judgment in this case allows Raval to pursue an I-485 application that has, at least, some chance of being granted. But my dismissal of plaintiffs' I-140 claims rules this out. An "approved I-140 Petition" is "*required* for the processing of a[n] I-485 Application." *George v. Napolitano*, 693 F. Supp. 2d 125, 131 (D.D.C. 2010) (emphasis added). Since Raval cannot obtain the prerequisite I-140 approval, he cannot obtain relief that permits the possibility of a successful I-485 application. *See Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 134 (D.D.C. 2012) ("Any injury Plaintiff might attribute to the denial of his [I-485] application[] could only be redressed by an order requiring Defendants to re-open and ultimately approve Real Technologies' I-140 petition."). Plaintiffs, therefore, lack standing to challenge the denial of that application.

Similarly, a reinstated labor certification offers no relief to plaintiffs when the associated I-140 petition is foreclosed. "A labor certification involving a specific job offer

8

is valid only for the particular job opportunity" identified and only for "the alien for whom certification was granted." 20 C.F.R. § 656.30(c)(2) (2004);[3] *see also* Compl. Ex. 2 at 9. Even if approved, the certification on its own does not authorize the beneficiary to work for the employer who sought it—work authorization requires an I-140 petition, too. *See George*, 693 F. Supp. 2d at 128 ("An alien cannot work in the United States without the appropriate authority from USCIS to do so. . . . *Upon approval of an I–140 Petition*, the named alien receives a visa which allows him to work for the named employer." (emphasis added)). Because a labor certification is the first step in a multi-step process for securing a specific individual's work authorization, injuries caused by a certification's invalidation are not remedied when the beneficiary's work authorization remains out of reach. Rather, invalidated or denied labor certifications can be redressed through a lawsuit when the "offer of employment" at issue "remains open" *and* "[US]CIS could grant [the associated I-140] petition." *Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013). Plaintiffs fail at the second step. KPS's I-140 has been revoked, and the revocation cannot be reversed or vacated through this suit.[4] A reinstated labor certification would, therefore, leave the parties as

---

[3] KPS's labor certification was filed before March 28, 2005, so it is governed by the Department of Labor regulations that were in force in 2004. *See* Implementation of New Labor Certification System, 69 Fed. Reg. 77,325, 77,326 (Dec. 27, 2004); *see also* Compl. Ex. 2 at 9 n.10.

[4] There is no suggestion in the pleadings that USCIS's revocation of the I-140 petition was without prejudice to KPS and Raval renewing their applications. The Eighth Circuit permitted a challenge to the invalidation of a labor certification where the invalidation "triggered the automatic revocation of the [petitioner's] previously[] approved I-140" and the I-140 "revocation was without prejudice to [the petitioner] filing . . . a new . . . petition." *Sugule v. Frazier*, 639 F.3d 406, 410 (8th Cir. 2011). In those circumstances—where the non-prejudicial denial meant USCIS still "could grant [a refiled I-140] petition," *Patel*, 732 F.3d at 638—a court order reinstating the labor certification would allow the petitioner to continue his pursuit of the work visa at issue. But plaintiffs allege different circumstances here, and their allegations make clear that a reinstated labor certification will not make them eligible for a renewed visa petition. According to

9

they now stand: KPS would remain unauthorized to employ Raval and unable to secure an approved I-140 petition. Just like with the I-485 application, plaintiffs' inability to obtain relief on their I-140 claims prevents them from obtaining relief that redresses the invalidation of KPS's labor certification.

Accordingly, plaintiffs' complaint must be dismissed in its entirety. Congress has stripped courts of jurisdiction to hear plaintiffs' challenge to the revocation of KPS's I-140 petition, and plaintiffs consequently lack standing to challenge the invalidation of KPS's labor certification and the denial of Raval's I-485 application.

## CONCLUSION

For the foregoing reasons, the Government's motion to dismiss is GRANTED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

plaintiffs' complaint, USCIS determined that Raval willfully misstated his work experience and, based on the resulting fraud finding, revoked both KPS's I-140 petition and labor certification. *See* Compl. ¶¶ 22-25. According to the exhibits attached to the complaint, USCIS also provided two independent reasons for revoking KPS's I-140—fraud aside, Raval did not meet the experience requirements listed on KPS's labor certification, and KPS did not establish its ability to pay the wage identified on the certification. *See* Compl. Ex. 1 at 12 [Dkt. # 1-3]; *see also* Compl. ¶ 25 (describing USCIS's two additional bases for revoking KPS's I-140 petition and labor certification). So, here, USCIS provided three discrete bases for revoking KPS's I-140 petition, and none were the automatic result of the labor certification invalidation. Resolving plaintiffs' claims about the labor certification in their favor would not mean "[US]CIS could grant [KPS's associated I-140] petition." *Patel*, 732 F.3d at 638.